1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2   Including Professional Corporations
   JAMES E. CURRY, Cal. Bar. No. 115769
3  MATTHEW G. ARDOIN, Cal. Bar No. 293350
   1901 Avenue of the Stars, Suite 1600
4  Los Angeles, California 90067-6055
   Telephone:  310.228.3700
5  Facsimile:   310.228.3701
   Email:       jcurry@sheppardmullin.com
6               mardoin@sheppardmullin.com

7  Attorneys for Defendants
   LE PREMIER PRODUCTIONS, INC.;
8  COHEN MEDIA GROUP, LLC;
   FULLDAWA FILMS, LLC; and BBC
9  FILMS

10

11              UNITED STATES DISTRICT COURT

12      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

13

14  HIT BOUND MUSIC, LTD., a            Case No. 2:16-cv-07125-CBM-KSx
    Canadian Corporation,
15                                      BRITISH BROADCASTING
                    Plaintiff,          CORPORATION'S
16                                      (ERRONEOUSLY SUED AS BBC
              v.                        FILMS) NOTICE OF MOTION
17                                      AND MEMORANDUM OF POINTS
    BBC FILMS, a British corporation; LE AND AUTHORITIES IN SUPPORT
18  PREMIER PRODUCTIONS, INC., a        OF MOTION TO DISMISS FOR
    New York corporation; COHEN         LACK OF PERSONAL
19  MEDIA GROUP, LLC, a New York        JURISDICTION
    limited liability company;
20  FULLDAWA FILMS, LLC, a
    Delaware limited liability company; and  HEARING
21  DOES 1-10, inclusive,               Date:       May 9, 2017
                                        Time:       10:00 a.m.
22                  Defendants.         Location    Crtrm: 8B

23                                      Judge:  Hon. Consuelo B. Marshall
                                        Crtrm.: 8B
24

25                                      [Complaint Filed: September 22, 2016]

26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on May 9, 2017, at 10:00 a.m. in Courtroom 8B at the First Street Courthouse located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant British Broadcasting Corporation, erroneously sued as BBC Films ("BBC"), will and does move the Court for an order dismissing this case as to BBC for lack of personal jurisdiction under Federal Rules of Civil Procedure Rule 12(b)(2).

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 15, 2017.  The parties agreed to during the conference to continue the date on which BBC was obligated to respond to Plaintiff's First Amended Complaint; however, the parties failed to resolve the dispute informally, making this motion necessary.

This motion is based on the ground that BBC is not subject to personal jurisdiction in California.  This motion will be based upon this Notice of Motion and Motion, the accompanying memorandum of points and authorities, the declarations of Helen Giles and Rachael Horovitz, all pleadings, records, and papers on file herein, as well as such other oral and/or documentary evidence and argument as may be presented before or at the time of the hearing of this Motion.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated:  March 16, 2017     By     /s/ James E. Curry

JAMES E. CURRY
MATTHEW G. ARDOIN
Attorneys for Defendants
LE PREMIER PRODUCTIONS, INC.;
COHEN MEDIA GROUP, LLC;
FULLDAWA FILMS, LLC; and BBC FILMS

1

**TABLE OF CONTENTS**

2

**Page**

3

I.    INTRODUCTION ................................................................................. 1

4

II.   FACTUAL BACKGROUND ................................................................ 2

5

    A.    Background On British Broadcasting Corporation ................................. 2

6

    B.    *My Old Lady* .......................................................................................... 2

7

    C.    BBC's Negotiations Relating To *My Old Lady* ..................................... 3

8

    D.    BBC's Agreements Relating To *My Old Lady* ....................................... 5

9

    E.    Plaintiff's Lawsuit For Copyright Infringement .................................... 5

10

III.  THIS COURT LACKS PERSONAL JURISDICTION OVER BBC ............. 6

11

    A.    Plaintiff Has The Burden Of Establishing Personal Jurisdiction ........... 6

12

    B.    Standard For Determining Whether Personal Jurisdiction Exists ......... 7

13

    C.    There Is No General Jurisdiction Over BBC Because BBC Lacks
        Continuous And Systematic Contacts With The State Of
        California .................................................................................................. 8

14

15

    D.    There Is No Specific Jurisdiction Over BBC .......................................... 9

16

        1.    BBC Has Not Purposefully Directed Its Activities At
            California Or Purposely Availed Itself Of The Privilege Of
            Conducting Business In California ................................................ 10

17

18

            a.    BBC Has Not Purposefully Directed Its Activities
                At California ....................................................................... 11

19

20

            b.    BBC Has Not Purposefully Availed Itself Of The
                Privilege Of Conducting Business In California .............. 12

21

        2.    Plaintiff's Claims Do Not Arise Out Of BBC's Activities
            Relating to *My Old Lady* ............................................................ 15

22

23

        3.    Exercise Of Personal Jurisdiction Over BBC Would Be
            Unreasonable. ................................................................................ 16

24

            a.    BBC Has Not Extensively Interjected Itself Into
                California, And It Would Be Burdensome For BBC
                To Defend Itself Here ........................................................ 16

25

26

            b.    Hearing Plaintiff's Claims Against BBC In
                California Would Conflict With U.K. Sovereignty ......... 17

27

28

-i-

c.   California Has No Interest In Adjudicating This Dispute...........................................................................18

d.   California Will Not Provide The Most Efficient Judicial Resolution Of This Controversy And Plaintiff Has Not Proven That He Lacks An Alternative Forum. ..............................................18

IV.   CONCLUSION ..............................................................................19

SMRH:481823531.1                                   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Abrams Shell v. Shell Oil Co.*
    165 F.Supp.2d. 1096 (C.D. Cal. 2001) ................................................................... 6

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*
    551 F.2d 784 (9th Cir. 1977) ................................................................................... 6

*Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*
    1 F.3d 848 (9th Cir. 1993) ......................................................................... 16, 17, 18

*Asahi Metal Indus. v. Superior Court*
    480 U.S. 102, 107 S.Ct. 1026, 94 L. Ed. 2d 92 (1987) ................................. 16, 17

*AT&T v. Compagnie Bruxelles Lambert*
    94 F.3d 586 (9th Cir. 1996) ................................................................................... 6

*Baca Gardening & Landscaping, Inc. v. Prizm Vinyl Corp.*
    2008 U.S. Dist. LEXIS 94641 (C.D. Cal. Nov. 12, 2008) ................................... 13

*Boschetto v. Hansing*
    539 F.3d 1011 (9th Cir. 2008) ..................................................................... 9, 10, 12

*Browne v. McCain*
    612 F.Supp.2d 1118 (C.D. Cal. 2009) ............................................................ 10, 11

*Burger King Corp. v. Rudzewicz*
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ..................... 9, 12, 13, 16

*Calder v. Jones*
    465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed. 2d 804 (1984) ..................................... 11

*Core-Vent Corp. v. Nobel Industries, A.B.*
    11 F.3d 1482 (9th Cir. 1993) ......................................................................... 16, 18

*Cubbage v. Merchent*
    744 F.2d 665 (9th Cir. 1984) ................................................................................. 7

*Daimler AG v. Bauman*
    __ U.S. __, 134 S. Ct. 746, 187 L.Ed.2d 624 (2014) ........................................ 8, 9

-iii-

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.*
  557 F.2d 1280 (9th Cir. 1977) .................................................................. 7

*Davidson v. Time Warner*
  1997 U.S. Dist. LEXIS 21559 (S.D. Tex. Mar. 31, 1997) .................................. 13

*Delong Equipment v. Washington Mills Abrasive Co.*
  840 F.2d 843 (11th Cir. 1988) ................................................................. 13

*Doe v. American Nat'l Red Cross*
  112 F.3d 1048 (9th Cir. 1997) ................................................................. 15

*Doe v. Unocal*
  248 F.3d 915 (9th Cir. 2001) .................................................................. 15

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain*
  284 F.3d 1114 (9th Cir. 2002) ............................................................ 17, 18

*Gray & Co. v. Firstenberg Machinery Co.*
  913 F.2d 758 (9th Cir. 1990) .................................................................. 13

*Hanson v. Denckla*
  357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958) .................................... 10

*International Shoe Co. v. Washington*
  326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ........................................... 7

*Martinez v. Aero Caribbean*
  764 F.3d 1062 (9th Cir. 2014) ................................................................... 8

*Mavrix Photo, Inc. v. Brand Tech., Inc.*
  647 F.3d 1218 (9th Cir. 2011) ................................................................. 11

*O'Reilly v. Valley Entm't, Inc.*
  2011 U.S. Dist. LEXIS 15826 (N.D. Cal. Jan 4, 2011) ..................................... 11

*Omeluk v. Langsten Slip & Batbyggeri A/S*
  52 F.3d 267 (9th Cir. 1995) ................................................................. 7, 15

*Panavision International, L.P. v. Toeppen*
  141 F.3d 1316 (9th Cir. 1998) ................................................................. 15

*Poor Boy Prods. v. Fogerty*
  2015 U.S. Dist. LEXIS 113086 (D. Nev. Aug. 26, 2015) .................................... 11

-iv-

*Roll v. Dimension Films, L.L.C.*
    2006 U.S. Dist. LEXIS 4667 (S.D. Ohio Jan. 23, 2006) ............................... 13, 14

*Roth v. Marquez*
    942 F.2d 617 (9th Cir. 1991) ................................................................. 13

*Schwarzenegger v. Fred Martin Motor Co.*
    374 F.3d 797 (9th Cir. 2004) ........................................................ 8, 10, 11

*Sher v. Johnson*
    911 F.2d 1357 (9th Cir. 1990) ...................................................... 8, 9, 13

*Terracom v. Valley Nat'l Bank*
    49 F.3d 555 (9th Cir. 1995) ..................................................................... 7

*World-Wide Volkswagen Corp. v. Woodson*
    444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) ................................ 9, 10

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*
    433 F.3d 1199 (9th Cir. 2006) ....................................................... 10, 11

*Zeigler v. Indian River County*
    64 F.3d 470 (9th Cir. 1995) ........................................................... 7, 16

Statutes

California Code of Civil Procedure § 410.10 ................................................... 7

Other Authorities

Federal Rule of Civil Procedure 12(b)(2) ....................................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

British Broadcasting Corporation, erroneously sued as BBC Films, ("BBC") should be dismissed from this lawsuit because California courts lack personal jurisdiction over BBC.  BBC's conduct involves simply financing the film *My Old Lady* which was filmed overseas and receiving certain public service broadcast rights in the U.K. (including, among others, free-to-air television rights).  The Court lacks specific personal jurisdiction over BBC because it did not travel to California for business related to *My Old Lady,* which was filmed overseas, and did not distribute the film theatrically or in the secondary markets in California.  The film was neither filmed in California nor did any post-production activity occur in California.  BBC's major agreements are governed by the laws of England and Wales and have venue clauses designating exclusive jurisdiction in the courts of England and Wales.

Even if the Court found that BBC had some contacts with California in connection with its role as a financier of *My Old Lady* (it did not), those contacts are not the "but for" cause of the alleged harm to Plaintiff as required by the second prong for establishing specific jurisdiction.  Defendants Le Premier Productions, Inc., Cohen Media Group, LLC, Fulldawa Films, LLC, and BBC (collectively, "Defendants") are producers of the motion picture *My Old Lady*.  Plaintiff claims that Defendants violated its copyrights in musical compositions that were used in *My Old Lady's* soundtrack, even though the Defendants obtained a license to use those same works from the composer of the musical compositions, Paul Mehling.  BBC had no part in negotiating music license agreements, such as the one at issue.  BBC's conduct is not the "but for" cause of Plaintiff's alleged harm because even if *My Old Lady* was financed and licensed to an entity other than BBC, the use of the Paul Mehling's musical compositions would have still occurred, and Plaintiff still would have (allegedly) had his copyrights infringed.  None of BBC's conduct

caused any harm to Plaintiff.

Moreover, there are no justifications for exercising general jurisdiction over BBC.  BBC is an English organization that has a principal place of business in London, U.K.  BBC does not do business in California and does not operate any television or radio stations in California.  Nor does BBC own or rent any real property in California.  BBC lacks any significant connections to California justifying the exercise of jurisdiction under the doctrines of either general or specific jurisdiction.

## II.    FACTUAL BACKGROUND

### A.    Background On British Broadcasting Corporation

BBC is the main public service provider of broadcast television and radio news and other entertainment content in the United Kingdom ("U.K."). [Declaration of Helen Giles ("**Giles Decl.**") ¶ 3.]  BBC was established by Royal Charter and Agreement, which forms its UK Constitutional basis as presented to Parliament.  [*Id.*]  As would be expected, BBC's principal place of business is located in the U.K.  [*Id.* ¶ 2.]  BBC does not own or operate any television or radio stations in California or own or rent any real property in California.  [*Id.* ¶ 4.]  Nor is the BBC qualified to do business in California.  [*Id.*]

BBC Films, the erroneously named party in this lawsuit, is a division of BBC, not a separate company.  [Giles Decl. ¶ 5.]  BBC Films does not handle the actual production (*e.g.*, filming or editing) of motion pictures.  [*Id.*]  Rather, BBC Films primarily acquires certain rights in the U.K. to motion pictures, which are intended to be eventually shown on BBC's channels in the U.K.  [*Id.*]  BBC Films also finances independent motion pictures with the goal of producing British films.  [*Id.*]

### B.    *My Old Lady*

*My Old Lady* (sometimes referred to as the "Film") is a motion picture written and directed by Israel Horovitz, a famous American playwright.  The film focuses on Mathias, played by Kevin Kline, a "down-on-his-luck" fifty-something New

-2-

Yorker who is short on money.  Mathias travels to Paris, France, looking to sell a valuable apartment he inherited from his father in the Marais district.  Mathias discovers that an older woman holds a life-estate in his father's apartment, and, in addition to inheriting that encumbered apartment, Mathias also discovers that he inherited an obligation to make monthly payments to the older woman.  Mathias moves into the apartment and the Film follows Mathias's relationship with the older woman – who Mathias learns was his father's lover – and the woman's daughter.

*My Old Lady* was produced by Le Premier Productions, Inc./Deux Chevaux Films,[1] Krasnoff/Foster Entertainment, BBC Films, Fulldawa Films, and Cohen Media Group, LLC.  Le Premier Productions and Deux Chevaux Films are owned by Rachel Horovitz, a New York resident and a producer of *My Old Lady*.  Both Le Premier Productions and Deux Chevaux are incorporated and have their principal place of businesses in New York, New York.  Gary Foster, who also worked as a producer on the Film, is an owner of Krasnoff/Foster Entertainment and is based in Santa Monica, California.  Fulldawa Films is a French film production company that assisted with filming in France.  And Cohen Media Group, headquartered in New York, was the company that distributed *My Old Lady* in theaters throughout the United States ("U.S.").

*My Old Lady* was filmed entirely in France.  [Declaration of Rachael Horovitz ¶ 2.]  Post-production work took place entirely in the State of New York.  [*Id.* ¶ 3.]  Additionally, because the Film was shot in France and post-production took place in New York, the producers of *My Old Lady* were able to take advantage of New York State and French tax rebates.  [*Id.* ¶ 4.]

**C.      BBC's Negotiations Relating To *My Old Lady***

---

[1]    Rachel Horovitz is the owner of both Le Premier Productions and Deux Chevaux.  She conducted some business related to the Film through Deux Chevaux Inc.  However, the production entity created for the film was Le Premier Productions.

Acting Head of BBC Films, Joe Oppenheimer, was the first person to present *My Old Lady* as a potential investment opportunity to BBC.  [Giles Decl. ¶ 6.]  In or around July 2013, BBC commenced negotiations concerning *My Old Lady*, which were initially conducted with Protagonist Pictures and Cinetic Media, who represented the producers Rachael Horovitz and Gary Foster.  [*See id.* ¶ 7, 14-20, Exs. A – G.]  Protagonist Pictures is a U.K.-based company that sold rights to distribute the Film in various territories around the world.  [*Id.* ¶ 8.]  Cinetic Media is a New York-based company that helped obtain and negotiate financing agreements for *My Old Lady*.  [*Id.* ¶ 8.]  Then, in August 2014, Bethany Haynes, a New York based attorney, entered into the negotiation process with BBC, and shortly thereafter, Adam Rosen, a Los Angeles attorney, became involved in negotiations as well.  [*See id.* ¶ 21 – 23, Ex. H – J.]

During negotiations concerning *My Old Lady*, BBC never traveled to the U.S., let alone to California, to discuss or to work on the Film.  [*Id.* ¶ 9.]  All negotiations were held via teleconference or took place through email communications.  [*Id.*]  Additionally, BBC knew that *My Old Lady* would not be filmed in California (filming would be in France) and BBC knew that no post-production work would take place in California (post-production would take place in New York).  [*Id.*]

After negotiations were completed, BBC did not travel to California for any business related to *My Old Lady*.  [Giles Decl. ¶ 11.]  BBC did not negotiate the acquisition of rights to use music in *My Old Lady*.  [*Id.* ¶ 12.]  Nor did BBC distribute *My Old Lady* in any theaters or secondary markets in the U.S., let alone California.  [*Id.* ¶ 11.]  As explained below, BBC merely provided a portion of the Film's financing and acquired certain public service broadcast rights in *My Old Lady*, including, among others, the right to broadcast on free-to-air television in the U.K.

### D.   BBC's Agreements Relating To *My Old Lady*

BBC and Rachael Horovitz's company, Deux Chevaux, entered into various agreements in September 2013 related to *My Old Lady*.  [*See, e.g.* Giles Decl. ¶ 24 – 25, Exs. K – L.]  BBC entered into a license agreement in which it obtained rights to exploit *My Old Lady* throughout the U.K., Northern Ireland, the Channel Islands and the Isle of Man, the United Kingdom continental shelf, the Republic of Ireland, Malta and Gibraltar for a period of fifteen years.  [*Id.* ¶ 25, Ex. L ¶¶ 1, 3.1.]  BBC's rights were limited to the exploitation of the Film "for reception by television or any other consumer device including without limitation all Free Television Rights, and Public Service Rights. . . ."  [*Id.* ¶ 25, Ex. L ¶ 1.1 ("BBC Rights").]  In return for these rights, BBC paid a license fee of $232,500.  [*Id.* ¶ 25, Ex. L ¶ 4.]

BBC also entered into a production finance agreement with Deux Chevaux in which BBC invested $437,500 in *My Old Lady* – an investment separate from and in addition to the license fee paid above.  [*Id* ¶ 24, Ex. K ¶ 1 ("BBC Advanced Equity" and "BBC Equity Advance").]  In return, BBC received certain approval rights over contracts and hiring decisions in connection with the production (*id*. ¶ 24 Ex. 5 ¶ 2), input in creative aspects of the production (*id*. ¶ 24 Ex. K ¶ 8.6), and film credits, including a presentation credit and two executive producer credits (*id*. ¶ 24, Ex. K ¶ 12.1.1, 12.2), to name a few.

BBC was also involved with approving various other agreements relating to the Film, including agreements for third parties to distribute the Film in territories around the world.  [*See, e.g.,* Giles Decl. ¶ 26, Ex. M.)  Virtually every agreement was expressly governed by the laws of England and Wales with exclusive jurisdiction in the courts of England and Wales.  [Giles Decl. ¶ 10.]

### E.   Plaintiff's Lawsuit For Copyright Infringement

Plaintiff is a Canadian corporation that is engaged in the business of music publishing.  [Dkt. No. 12, First Amended Complaint ("FAC")) ¶ 4.]  On October 17, 2016, Plaintiff filed its FAC against Defendants for copyright infringement.  [FAC

-5-

¶¶ 21-27.] Plaintiff claims that it owns the copyrights for the musical compositions for the songs *I'm Not Impressed*, *Giselle*, and *(It's Not Exactly a Sonata) for Renata*, which were all composed by Paul Mehling and used in the Film. [FAC ¶ 12.] Plaintiff claims that Defendants infringed his copyrights in these musical compositions by including them in *My Old Lady's* musical soundtrack without his permission. [FAC ¶ 15.] Defendant Le Premier Production did, however, obtain a license from Paul Mehling, the composer, to use these songs in *My Old Lady*.

Plaintiff's complaint is devoid of any allegations that BBC itself broadcasted or distributed the Film in California – or that BBC took any action at all in California. Plaintiff merely set forth the following conclusory allegations about this Court's ability to exercise jurisdiction over BBC:

> This Court has personal jurisdiction over each of Defendants because each resides in, is domiciled in, and/or does systematic and continuous business in the judicial district, the various acts complained of herein occurred in this judicial district and/or Defendants have caused injury to Plaintiff and to Plaintiff's intellectual property in this judicial district.

[FAC ¶ 2.]

## III. THIS COURT LACKS PERSONAL JURISDICTION OVER BBC

### A. Plaintiff Has The Burden Of Establishing Personal Jurisdiction

It is black letter law that the "plaintiff bears the burden of establishing the jurisdictional facts." *Abrams Shell v. Shell Oil Co.*, 165 F.Supp.2d. 1096, 1103 (C.D. Cal. 2001). *See also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (affirming the district court's dismissal for lack of personal jurisdiction and noting that "[a]s the party seeking to invoke federal jurisdiction, AT&T has the burden of establishing its existence."). Once a defendant raises a factual challenge to personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v.*

-6-

*Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).  Although the Court may presume the truth of uncontroverted allegations in the complaint when deciding a motion to dismiss without an evidentiary hearing, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."  *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

Because BBC has moved to dismiss supported by competent evidence (*i.e.*, the Declarations of Rachael Horovitz and Helen Giles), Plaintiff bears the burden of establishing that this Court has personal jurisdiction over it.

**B.**    **Standard For Determining Whether Personal Jurisdiction Exists**

To exercise personal jurisdiction over a non-resident defendant, a court must conclude that: (1) such jurisdiction is authorized under the long-arm statute of the forum state; and (2) exercising such jurisdiction would comport with constitutional Due Process.  *Zeigler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).  California's long-arm statute, California Code of Civil Procedure § 410.10, extends to the limits of the Due Process Clause.  *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995).  Thus, this Court must determine whether the exercise of personal jurisdiction over BBC in this case would be consistent with the requirements of the Due Process Clause.

As the Ninth Circuit has explained, "[t]he Due Process Clause protects an individual's 'liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations.'''  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269-270 (9th Cir. 1995) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S. Ct. 2174, 2181, 85 L. Ed. 2d 528, 540 (1985) and (additional internal quotes omitted)).  Thus, a defendant must have "certain minimum contacts with [a forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154; 90 L. Ed. 95 (1945) (internal quotations omitted).  These "minimum

-7-

contacts" are a jurisdictional prerequisite.  *Cubbage v. Merchent*, 744 F.2d 665, 668 (9th Cir. 1984) (noting that the *Int'l Shoe* requirements "must be met as to each defendant over whom jurisdiction is to be exercised").

Applying the "minimum contacts" test, courts have exercised personal jurisdiction over non-resident defendants in two forms:  general jurisdiction and specific jurisdiction.  BBC does not have sufficient contacts with California generally or in relation to this case to be subject to either form of jurisdiction.

C.   **There Is No General Jurisdiction Over BBC Because BBC Lacks Continuous And Systematic Contacts With The State Of California**

General jurisdiction exists when a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] at home in the forum State." *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 761, 187 L.Ed.2d 624 (2014).  Continuous and systematic contacts with a state alone are insufficient for a finding of general jurisdiction.  *Id*. at 761 (rejecting plaintiffs' argument that the Court approve the exercise of general jurisdiction in every state in which a "corporation 'engages in a substantial, continuous, and systematic course of business.'"); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  Rather, the finding of general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world," without regard for whether the plaintiff's allegations arise out of the defendant's activities in the forum state.  *Schwarzenegger*, 374 F.3d at 801.  *See also  Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Daimler*, 134 S. Ct. at 760.  "[T]he paradigm forum for the exercise of general jurisdiction" over a corporation is "one in which the corporation is fairly regarded as at home," such as the place of incorporation and principal place of business. *Id.*  Only in an "exceptional case"

-8-

will general jurisdiction be available anywhere else. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).

BBC's contacts with California are nowhere near so "continuous and systematic" as to render it "at home" in California. BBC is not incorporated or registered to do business in California. [Giles Decl. ¶ 4.] Nor is BBC's principal place of business located in California, or anywhere in the U.S. Thus, the "paradigm" scenarios for invoking the doctrine of general jurisdiction are absent.

Moreover, this is not an "exceptional case" where general jurisdiction exists due to BBC's affiliations with California. BBC does not have any business offices in California. It does not have any employees or agents headquartered in California, it does not operate any television or radio stations in California, and it does not own or lease any real property in California. To the extent that BBC could be haled into court in California, the same "global reach would presumably be available in every other state;" the Supreme Court expressly rejected the exercise of such "all-purpose jurisdiction" because it would make it impossible for a defendant – particularly one located in the U.K. – to structure its conduct with some minimum assurances about where they will and will not be amenable to suit. *See Daimler*, 134 S. Ct. at 761.

### D. There Is No Specific Jurisdiction Over BBC

In the absence of general personal jurisdiction, this Court must grant BBC's motion to dismiss unless Plaintiff can establish that specific personal jurisdiction exists. *Sher*, 911 F.2d at 1361. In making this determination, a court considers whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559; 62 L. Ed. 2d 490 (1980). The defendant's contacts must result "from actions by the defendant himself that create 'substantial connection' with the forum state." *Burger King Corp.*, 471 U.S. at 475; *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (requiring a "substantial connection" with the forum state to demonstrate purposeful

-9-

1  availment).  Mere foreseeability of an injury or event in another state is not "a

2  sufficient benchmark for personal jurisdiction."  *World-Wide Volkswagen*, 444 U.S.

3  at 295.

4      The Ninth Circuit implements a three-prong test to determine the propriety of

5  specific jurisdiction: "(1) The non-resident defendant must purposefully direct his

6  activities or consummate some transaction with the forum or resident thereof; or

7  perform some act by which he purposefully avails himself of the privilege of

8  conducting activities in the forum, thereby invoking the benefits and protections of

9  its laws; (2) the claim must be one which arises out of or relates to the defendant's

10 forum-related activities; and (3) the exercise of jurisdiction must comport with fair

11 play and substantial justice, *i.e.* it must be reasonable."  *Schwarzenegger*, 374 F.3d

12 at 802.  The plaintiff bears the burden on the first two prongs.  *Boschetto*, 539 F.3d

13 at 1016.

14     Plaintiff fails to satisfy these three criteria.

15     **1.   BBC Has Not Purposefully Directed Its Activities At**

16          **California Or Purposely Availed Itself Of The Privilege Of**

17          **Conducting Business In California**

18     In order to satisfy the first prong for specific jurisdiction, the plaintiff must

19 "show that the defendant either (1) purposefully availed itself of the privilege of

20 conducting activities in the forum, or (2) purposefully directed its activities toward

21 the forum."  *Browne v. McCain*, 612 F.Supp.2d 1118, 1123 (C.D. Cal. 2009), citing

22 *Schwarzenegger*, 374 F.3d at 801-02; *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.

23 Ct. 1228; 2 L. Ed. 2d 1283 (1958).  "In tort cases, [Ninth Circuit courts] typically

24 inquire whether a defendant 'purposefully direct[s] his activities' at the forum state,

25 applying an 'effects'  test that focuses on the forum in which the defendant's actions

26 were felt, whether or not the actions themselves occurred within the forum."  *Yahoo!*

27 *Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th

28 Cir. 2006) (*en banc*).  In the context of copyright infringement cases, the Ninth

-10-

Circuit  applies the purposeful direction analysis because copyright infringement is a "tort-like cause of action." *Schwarzenegger,* 374 F.3d at 803. *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011); *Browne,* 612 F. Supp. 2d at 1123.  On the other hand, a court generally uses the purposeful availment analysis in contract cases. *Browne*, 612 F. Supp. 2d at 1123.

Plaintiff cannot show that BBC is subject to specific jurisdiction under the purposeful direction or purposeful availment tests.

### a.   <u>BBC Has Not Purposefully Directed Its Activities At California</u>

"Purposeful direction" is evaluated by using the "effects test" established in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed. 2d 804 (1984). *Yahoo! Inc.*, 433 F.3d at 1206.  Under that test, the defendant must have: (1) committed an intentional act; (2) which was expressly aimed at the forum state; and (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.* at 1206.  The "second and third prongs of the *Calder*-effects test are conjunctive, not disjunctive.  That is, a defendant must not only cause harm to a person who he knows will feel a 'judicially sufficient amount of harm' in the forum state (third prong), the intentional activity must be directed to the forum state itself (the second prong)." *Poor Boy Prods. v. Fogerty*, 2015 U.S. Dist. LEXIS 113086, at *8 (D. Nev. Aug. 26, 2015).  Indeed, in *Calder*, not only was it known that the effects of a libelous article would be felt in California (because the defendant knew the plaintiff resided there), but the article was also expressly aimed at California (because the defendant in fact circulated the article there).  *Id.*, citing *Calder*, 465 U.S. at 784.

It is only foreseeable that a plaintiff, who resides in California, will suffer harm and financial loss when defendant distributes and reproduces plaintiff's work in California if a defendant ***knows*** that plaintiff actually resides in that state. *See O'Reilly*, 2011 U.S. Dist. LEXIS 15826, at *12; *Browne v. McCain*, 612 F.Supp.2d at 1125 ("[T]he Court finds that Plaintiff has not made a prima facie showing as to

-11-

1  the third requirement:  that ORP caused harm that it knew was likely to be suffered
2  in California.  Browne's contention that he is a well-known Southern California
3  resident, alone, is insufficient….").

4      Here, BBC's conduct was clearly not "expressly aimed at" California.
5  Presuming that BBC's "intentional act" was its entering into agreements to become
6  a financier and licensee of *My Old Lady*, BBC still did not expressly aim its activity
7  at California.  The Film was not shot in California and post-production work did not
8  take place in California.  BBC never traveled to California.  Nor did BBC distribute
9  or broadcast the Film in California.

10      Furthermore, Plaintiff cannot establish that BBC caused "harm that the [BBC
11  knew was] likely to be suffered in the forum state" for two reasons.  First, BBC was
12  not aware of Plaintiff prior to this lawsuit and did not know that Plaintiff was the
13  purported owner of musical compositions used in the Film.  [Giles Decl. ¶ 13.]
14  Because BBC did not know of Plaintiff, BBC could not possibly have known
15  Plaintiff would suffer any alleged harm.  Second, even if BBC knew about Plaintiff,
16  Plaintiff did not suffer any harm *in California*, the "forum state."  Plaintiff is a
17  Canadian corporation, and any purported harm suffered would have been suffered in
18  Canada.

19          **b.    BBC Has Not Purposefully Availed Itself Of The**
20                  **Privilege Of Conducting Business In California**

21      Even if the Court were to employ the purposeful availment analysis here – it
22  should not, given the case is one for copyright infringement – Plaintiff's allegations
23  fall far short of demonstrating that BBC purposefully availed itself of the privilege
24  of conducting business in California.  As explained above, the purposeful availment
25  analysis is generally reserved for suits "sounding in contract."  *Boschetto*, 539 F.3d
26  at 1016.  Plaintiff must establish that the BBC "purposefully avail[ed] [itself] of the
27  privilege of conducting activities within the forum State, thus invoking the benefits
28  and protections of its laws."  *Burger King Corp.*, 471 U.S. at 475.  The defendant

must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson,* 911 F.2d at 1362.

Placing a product, such as a film, in the "stream of commerce" is not sufficient in itself to render BBC amenable to personal jurisdiction in California, unless BBC itself distributed the film. *See Roll v. Dimension Films, L.L.C.*, 2006 U.S. Dist. LEXIS 4667, at *12 (S.D. Ohio Jan. 23, 2006) (film producers did not purposefully avail itself to the laws of Ohio where producers did not distribute the film in the U.S.); *Davidson v. Time Warner*, 1997 U.S. Dist. LEXIS 21559, at *25-26 (S.D. Tex. Mar. 31, 1997) (dismissing defendant artist for lack of personal jurisdiction, even though defendant "may have hoped" for national distribution, because plaintiff failed to link artist to product's distribution chain).  Moreover, a defendants entering into a contract with a California resident or negotiating with a California resident over the phone alone does not establish the requisite minimum contacts necessary for the exercise of personal jurisdiction. *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir. 1990); *Burger King Corp.*, 471 U.S. at 478; *Roth v. Marquez,* 942 F.2d 617, 622 (9th Cir. 1991) (defendants making telephone calls and returning letters to plaintiff in California does not support a finding of purposeful availment because "both this court and the courts of California have concluded that ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state.'");  *Delong Equipment v. Washington Mills Abrasive Co.*, 840 F.2d 843 (11th Cir. 1988).

A court's analysis will look at (1) prior negotiations between the parties; (2) contemplated future consequences; (3) course of dealings between the parties; and (4) whether a choice of law provision was included in the contract.  *Burger King Corp.*, 471 U.S. at 479; *Sher*, 911 F.2d at 1362; *Baca Gardening & Landscaping, Inc. v. Prizm Vinyl Corp.*, 2008 U.S. Dist. LEXIS 94641, at *10 (C.D. Cal. Nov. 12,

-13-

2008).

Here, the first factor – the parties' negotiations – favors a finding of no personal jurisdiction.  BBC never traveled to California or the U.S. during negotiations with the producers and their representatives relating to *My Old Lady*, although BBC did travel to Paris during filming.  Moreover, BBC's negotiations were primarily with Cinetic Media (a New York company representing New York entities) and Protagonist Pictures, a U.K. sales agent.  The only two parties located in California are Gary Foster, who is a producer of the film, and Adam Rosen, who, despite being a California attorney, represented the production entities located in New York.

The second factor – "contemplated future consequences" of the negotiations – do not favor a finding of personal jurisdiction.  BBC's negotiations were for (1) the right to acquire public service rights to *My Old Lady* in the U.K. (which included, among others, the right to broadcast *My Old Lady* on free-to-air television in the ***U.K.***) and (2) to provide financing.  Neither of these acts require that BBC conduct business in California.  Additionally, *My Old Lady* was not filmed in California and post-production work did not take place in California.  The fact that *My Old Lady* was distributed in California by Cohen Media Group is insufficient under the facts of this case to make the ***BBC*** subject to jurisdiction in California.  *See Roll*, 2006 U.S. Dist. LEXIS 4667, at * 12.

Finally, the last two factors – course of dealing between the parties and choice of law provisions in contracts – also favor the BBC.  BBC did not travel to California for any business related to *My Old Lady*, even after negotiations were completed.  Moreover, BBC made very clear to the producers that contracts directly entered into by the BBC for *My Old Lady* would be subject to the laws of England and Wales and that the parties would be subject to the jurisdiction of the courts of England and Wales.

MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**2.      Plaintiff's Claims Do Not Arise Out Of BBC's Activities Relating to *My Old Lady***

In order to satisfy the second prong – the claim "aris[es] out of" defendant's forum related conduct – the contacts between the defendant and the forum must be the "but for" cause of the harm to plaintiff. *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997) (holding contacts too "attenuated" to satisfy the "but for" test).  To meet this burden here, Plaintiff must prove that but for the BBC's purported contacts with California, Plaintiff would not have been harmed by the use of its purported copyrights in the Film. *See Doe v. Unocal*, 248 F.3d 915, 925 (9th Cir. 2001)(no personal jurisdiction where "Plaintiffs present no evidence, and it seems impossible that they would uncover any, suggesting that the pipeline project would not have gone forward without Total's dealings with Unocal. . . . it appears from the evidence presented to date that Unocal's negotiations with Total and MOGE were not necessary to the initiation of the project.").

Plaintiff's claims arise out the use of certain songs written by Paul Mehling in *My Old Lady*.  BBC had no involvement in the decision to use those songs, nor was BBC involved in drafting or executing license agreements to use those songs in *My Old Lady*.  [Giles Decl. ¶ 12.]  BBC simply entered into agreements to finance *My Old Lady* and to be a licensee.  Even if *My Old Lady* found a financier and licensee other than BBC, the use of Paul Mehling's songs would have still occurred, and Plaintiff would have purportedly had its copyrights infringed.  Accordingly, BBC is not the "but for" cause of Plaintiff's harm. *Omeluk*, 52 F.3d at 272 ("but for" test not met where plaintiff "would have suffered the same injury even if none of the Washington contacts had taken place").

-15-

### 3. Exercise Of Personal Jurisdiction Over BBC Would Be Unreasonable.

Plaintiff has failed to demonstrate the first two required elements for specific personal jurisdiction. But even assuming that Plaintiff had, this Court should still dismiss BBC because the exercise of personal jurisdiction over it would not be reasonable. *See Ziegler v. Indian River County*, 64 F.3d 470, 474-75 (9th Cir. 1995) (explaining that even if the first two requirements are met, in order to satisfy the Due Process Clause, the exercise of personal jurisdiction must be reasonable). The "reasonableness" requirement may defeat specific jurisdiction even if a defendant has personally engaged in forum-related activities. *Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L. Ed. 2d 92 (1987).

The following factors are used to determine if specific jurisdiction is reasonable: (1) the extent of purposeful interjection into the forum state; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Burger King*, 471 U.S. at 477. "None of the factors is dispositive in itself," and courts "must balance all seven." *Core-Vent Corp. v. Nobel Industries, A.B.*, 11 F.3d 1482, 1488 (9th Cir. 1993). These factors do not support exercising jurisdiction over BBC here.

### a. BBC Has Not Extensively Interjected Itself Into California, And It Would Be Burdensome For BBC To Defend Itself Here

BBC has not extensively interjected itself into California for the same reasons that it lacks minimum contacts with California. *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 852 (9th Cir. 1993) ("This factor parallels the question of minimum contacts"). As explained above, BBC did not travel to California, did not

-16-

intend to conduct any business in California, did not distribute *My Old Lady* in California, and made very clear that its policy was to include choice of law provisions using English law and providing English court's jurisdiction over any disputes.

Moreover, it would be burdensome for BBC to defend itself in California. The BBC employees who negotiated the terms of the contracts and who negotiated the license of the BBC rights in the Film all live and reside in the U.K.  It would be burdensome to force these witnesses to come to California to assist BBC in the defense of this lawsuit.  *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain*, 284 F.3d 1114, 1126 (9th Cir. 2002) (jurisdiction would be unreasonable where "potential witnesses and evidence are likely half a world away").

**b.**    **Hearing Plaintiff's Claims Against BBC In California Would Conflict With U.K. Sovereignty**

"Where, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction.  As the Supreme Court has noted, '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'"  *Amoco Egypt*, 1 F.3d at 852 (quoting *Asahi*, 480 U.S. at 115)).  BBC is an organization in the U.K. with a Royal Charter and has its principal place of business in London, U.K.  Plaintiff sued BBC even though all of BBC's conduct occurred in the U.K.  For these reasons, it would be unreasonable to exercise jurisdiction over BBC in California.  *Id.* (no jurisdiction over Philippine corporation in lawsuit involving damage to oil platform in Egypt); *Glencore Grain*, 284 F.3d at 1126 (no jurisdiction over Indian corporation in lawsuit involving a Dutch company's attempt to enforce an arbitration award that was issued in England).

-17-

1

2

        **c.**      <u>**California Has No Interest In Adjudicating This**</u>

                <u>**Dispute**</u>

3

4

5

6

7

8

9

10

11

12

      Plaintiff is a Canadian entity which is suing an U.K. organization based on agreements BBC entered into from the U.K. and governed by English law. California simply has no interest in interjecting itself into this lawsuit.  *Glencore Grain*, 284 F.3d at 1126 ("The underlying dispute involves foreign parties concerning a contract that was executed in England, that called for rice to be delivered in India, and which provided for English arbitration in the event of a dispute. California's interest in adjudicating this suit appears slight."); *Amoco Egypt*, 1 F.3d at 852 ("Washington has no interest in this claim. The vessel involved in the accident was not sailing from Washington and carried no Washington cargo. Neither the accident nor the lawsuit's outcome has any effect on Washington.").

13

14

15

        **d.**      <u>**California Will Not Provide The Most Efficient**</u>

                <u>**Judicial Resolution Of This Controversy And Plaintiff**</u>

                <u>**Has Not Proven That He Lacks An Alternative Forum.**</u>

16

17

18

19

20

21

22

      "The 'most efficient resolution' factor 'involves a comparison of alternative forums.'" *Glencore Grain*, 284 F.3d at 1126 (quoting *Amoco Egypt*, 1 F.3d at 852)). Moreover, "[t]he site where the injury occurred and where evidence is located usually will be the most efficient forum." *Amoco Egypt*, 1 F.3d at 852.  Here, the superior forum would be in either Canada, where Plaintiff was injured, or in England, where the BBC is located, along with all BBC's witnesses and documentary evidence related to this lawsuit against BBC.

23

24

25

26

27

      Furthermore, "[t]he plaintiff bears the burden of proving the unavailability of an alternative forum." *Core-Vent*, 11 F.3d at 1490.  Plaintiff has not proven that it could not have brought his claims in Canada or England, which both have a more substantial relationship to the claims that Plaintiff asserts in this case than California.

28

IV.     **CONCLUSION**

For the above reasons, BBC respectfully requests that the Court dismiss Plaintiff's complaint against BBC for lack of personal jurisdiction.


Dated:  March 16, 2017

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By      _____/s/ James E. Curry_____

JAMES E. CURRY
MATTHEW G. ARDOIN
Attorneys for Defendants
LE PREMIER PRODUCTIONS, INC.;
COHEN MEDIA GROUP, LLC;
FULLDAWA FILMS, LLC; and BBC FILMS

-19-