**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HIT BOUND MUSIC, LTD., a Canadian Corporation, | Case No.: 2:16-cv-7125 CBM (KSx) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT BBC FILMS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| BBC FILMS, a British corporation; LE PREMIER PRODUCTIONS, INC., a New York corporation; COHEN MEDIA GROUP, LLC, a New York limited liability company; FULLDAWA FILMS, LLC, a Delaware limited liability company; and DOES 1-10, inclusive | |
| Defendants. | |

The matter before the Court is Defendant British Broadcasting Corporation's ("BBC's") Motion to Dismiss pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction (the "Motion"). (Dkt. No. 40.)

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Hit Bound Music, Ltd. ("Plaintiff" or "Hit Bound") is a Canadian corporation in the business of music publishing. (Dkt. No. 12, First Amended Complaint ("FAC") ¶ 4.) Plaintiff alleges that Defendants infringed its copyrights for the musical compositions "*I'm Not Impressed*," "*Giselle*," and "*(It's Not*

1

*Exactly a Sonata) for Renata*" (the "Compositions"), by using the Compositions in the musical soundtrack to the film *My Old Lady* (the "Film") without Plaintiff's permission. (FAC ¶¶ 12, 15.)

In or around July 2013, BBC commenced negotiations concerning *My Old Lady* with various entities including a United Kingdom company that sold rights to distribute the Film in various territories around the world, and a New York-based company that helped obtain and negotiate financing agreements for the Film. (Declaration of Helen Giles, Legal and Business Affairs Manager at BBC Films ("Giles Decl.") ¶¶ 7, 14-20.) A New York based attorney and Los Angeles attorney were involved in the negotiations. (Giles Decl. ¶¶ 21-21, Ex. H – J.) BBC agreed to provide a portion of the Film's financing and acquired public service broadcast rights in *My Old Lady*, including the right to distribute the Film throughout the United Kingdom[1] for a period of fifteen years. (Giles Decl. ¶ 25, Ex. L.) BBC also entered into a production finance agreement and various other agreements for third parties to distribute the Film in territories around the world. (Giles Decl. ¶¶ 24-26.)

*My Old Lady* was filmed entirely in France, with post-production work taking place in New York. (Declaration of Rachel Horovitz, film producer who worked on production of *My Old Lady* ("Horovitz Decl.") ¶ 2.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a court to dismiss a Complaint for lack of personal jurisdiction.  "The Due Process Clause [of the Fourteenth Amendment] protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471

---

[1] BBC also acquired distribution rights in the following surrounding territories: Northern Ireland, the Channel Islands, the Isle of Man, the United Kingdom continental shelf, the Republic of Ireland, Malta, and Gibraltar.

1   U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319

2   (1945)).  "Where a defendant moves to dismiss a complaint for lack of personal

3   jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is

4   appropriate."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th

5   Cir. 2004) (citation omitted).

6          To prove personal jurisdiction, "[t]he plaintiff need only make a prima facie

7   showing of jurisdictional facts."  *Id.*  Where a 12(b)(2) motion challenges the facts

8   alleged, however, the motion must be decided on the basis of competent evidence

9   (usually declarations and discovery materials).  *Data Disc, Inc. v. Sys. Tech.*

10  *Assocs., Inc.*, 557 F.2d 1280, 1289-90 (9th Cir. 1977).  The plaintiff cannot

11  "simply rest on the bare allegations of its complaint," and the Court cannot assume

12  the truth of allegations in a pleading that is contradicted by a sworn affidavit.  *Id.*

13  at 1284.

14                          **III.    DISCUSSION**

15  **A.     General Jurisdiction**

16         A court has general jurisdiction over a foreign corporation defendant when

17  its "affiliations with the State are so 'continuous and systematic' as to render it

18  essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746,

19  749 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

20  (2011). A corporation's "continuous activity of some sorts within a state is

21  [generally] not enough to support the demand that the corporation be amenable to

22  suits unrelated to that activity." *Int'l Shoe*, 326 U.S. at 318 (1945). Rather, in the

23  paradigmatic circumstance for exercising general jurisdiction, the corporate

24  defendant is incorporated or has its principal place of business in the forum state.

25  *Daimler*, 134 S. Ct. at 761 n. 19; *Goodyear*, 564 U.S. at 924.

26         Here, there is no evidence indicating that BBC meets the requirements of

27  general jurisdiction. BBC's principal place of business is in the United Kingdom,

28  where it is the main public service provider of broadcast television, radio news,

1  and other entertainment content. (Giles Decl. ¶¶ 2-3.) BBC has no business

2  operations or property in California, and is not incorporated there. (Giles Decl.

3  ¶ 4.)

4  Plaintiff argues that BBC should be subject to general jurisdiction in

5  California because its subsidiary, BBC Worldwide, operates an office in Los

6  Angeles. (Opp'n 3.) Plaintiff's counsel provides a copy of BBC Worldwide's

7  website which indicates that it operates an office at 10351 Santa Monica

8  Boulevard.  (Declaration of Jennifer J. McGrath ("McGrath Decl."), Ex. 1.)

9  However, "[t]he existence of a parent-subsidiary relationship is insufficient, on its

10  own, to justify imputing one entity's contacts with a forum state to another for the

11  purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059,

12  1070 (9th Cir. 2015). In *Ranza*, the Ninth Circuit recognized that following the

13  Supreme Court's decision in *Daimler*, the agency theory is no longer available to

14  establish jurisdiction over a parent company, as "[s]uch a theory . . . sweeps too

15  broadly to comport with the requirements of due process." *Id.* at 1071.

16  Accordingly, Plaintiff fails to make a prima facie showing of jurisdictional

17  facts for general jurisdiction.

18  **B.    Specific Jurisdiction**

19  Specific personal jurisdiction over Defendant exists if:

20
21     (1)   Defendant purposefully directed its activities or consummated some
22         transaction with the forum or resident of the forum; or performed
23         some act by which it purposefully availed itself of the privilege of
       conducting activities in the forum, thereby invoking the benefits and
       protections of its laws;

24     (2)   the claim arises out of or relates to Defendant's forum-related
25         activities; and

26     (3)   the exercise of jurisdiction comports with fair play and substantial
       justice, *i.e.* it is reasonable.
27
28  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir.

2010).  Plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802 (citation omitted).  If Plaintiff fails to satisfy either of the first two prongs, "personal jurisdiction is not established in the forum state." *Id*.

With respect to the first prong, "[a] purposeful availment analysis is most often used in suits sounding in contract," whereas "[a] purposeful direction analysis, . . . is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802.  Accordingly, the Court conducts a purposeful direction analysis in this case. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (applying purposeful direction analysis in copyright infringement case).

In evaluating the purposeful direction prong, the Ninth Circuit applies an "effects" test, which "requires that the defendant have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 806.  All three parts of the effects test must be satisfied. *Id*.

Plaintiff provides no evidence that BBC's conduct was "expressly aimed" at California. The expressly aimed requirement of the effects test is satisfied when the defendant is alleged to have "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). Here, the manager who negotiated BBC's involvement in the Film "had never heard of [Plaintiff] prior to this lawsuit and, therefore, did not know that [Plaintiff] was a corporation with its principal place of business in Canada." (Giles Decl. ¶ 13.) BBC obtained certain rights to distribute the Film in the United Kingdom only, not to California or anywhere else in the United States. (Giles Decl. ¶¶ 5, 9, 11.) The Film was not shot in California and post-production work did not take place in California. (Horovitz Decl. ¶¶ 1–3.) The mere fact that *My Old Lady* was shown

1  and distributed by a third party[2] in California is not enough to establish that BBC's

2  conduct was expressly aimed at California. *See Schwarzenegger*, 374 F.3d at 805

3  (emphasizing that "'something more' than mere foreseeability [is required] in

4  order to justify the assertion of personal jurisdiction . . .").

5       Plaintiff argues that BBC's pre-production negotiations were expressly

6  aimed at California. BBC negotiated (1) the right to acquire public service rights

7  to *My Old Lady* in the U.K. and (2) to provide financing for the Film. (Giles Decl.

8  ¶¶ 24, 25, Exs. K, L.) However, neither of these agreements were expressly aimed

9  at business in California, and both agreements contained venue clauses

10  designating exclusive jurisdiction in the courts of England and Wales. (*Id.*) The

11  fact that a Los Angeles attorney was involved during BBC's negotiations is

12  insufficient by itself to confer personal jurisdiction. *See Burger King*, 471 U.S. at

13  478. BBC's negotiations took place entirely via teleconference or email

14  correspondence; BBC did not travel to California for any business related to the

15  Film. *See Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (The

16  "ordinary 'use of the mails, telephone, or other international communication

17  simply do not qualify as purposeful activity invoking the benefits and protections

18  of the [forum] state.'").

19       Based on the evidence provided, the Court therefore finds that the expressly

20  aimed prong of the effects test has not been met here.[3]

21       Because the Court finds that Plaintiff has not satisfied the purposeful

22  direction prong of the specific jurisdiction test, it does not reach the remaining two

23

24  [2] BBC contends that Defendant Cohen Media Group, LLC distributed the Film in

25  California. (Reply at 5.)

26  [3] The Court "need not, and do[es] not" reach the other parts of the effects test

27  because Plaintiff fails to "sustain his burden with respect to the second part of the

28  . . . effects test." *Schwarzenegger*, 374 F.3d at 807 n.1.

prongs of that test. *Schwarzenegger*, 374 F.3d at 802.

## V.     CONCLUSION

The Court **GRANTS** Defendant BBC's Motion to Dismiss. Plaintiff's claims against BBC are hereby **DISMISSED WITH PREJUDICE**.


**IT IS SO ORDERED.**


DATED:  June 28, 2017

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE